Joseph G. Pia, joe.pia@padrm.com, #9945
Sara E. Payne, spayne@padrm.com, #14008
Jedediah G. Brinton, jbrinton@padrm.com, #14145
PIA ANDERSON DORIUS REYNARD & MOSS, LLC
222 South Main Street, Suite 1830
Salt Lake City, Utah 84101
Phone: (801) 350-9000
Fax: (801) 350-9010

*Attorneys for Non-Party Lannea Butler*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SYNCPOINT IMAGING, LLC, a Texas limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>NINTENDO OF AMERICA, INC., et al.,<br><br>Defendants. | **MOTION AND MEMORANDUM TO QUASH NON-PARTY SUBPOENAS AND TO AWARD FEES, AND ISSUE A PROTECTIVE ORDER**<br><br>**Case No. 2:16-mc-00013-DAK**<br><br>Pending in the United States District Court For the Eastern District of Texas Civil No. 2:15-cv-00247-JRG-RSP |

Lannea Butler hereby moves the Court for a protective order against the subpoena of Defendants Nintendo Co. Ltd. and Nintendo of America, Inc. (collectively "Nintendo") commanding her to produce documents by January 2, 2016, and appear for a deposition on January 6, 2016, in connection with her role as trial paralegal of lead counsel in the above-captioned case.[1]  Ms. Butler brings this motion in this Court as the court for the district where

---

[1] January 2, 2016 was a Saturday.  Today, January 4, 2016 is the first business day after that date.

compliance with the subpoena is required under Rule 45(d). The subpoena issued from the United States District Court for the Eastern District of Texas.

## Introduction

On November 20, 2015, Nintendo issued a subpoena ("First Subpoena") commanding Butler to appear at a deposition and to produce documents connected to her work as a paralegal at the law firm of Pia Anderson Dorius Reynard & Moss, LLC, which represents SyncPoint Imaging, LLC, in the underlying case in the United States District Court for the Eastern District of Texas. *SyncPoint Imaging, LLC v. Nintendo of America Inc. et al*, Case No. 2:15-cv-00247-JRG-RSP (E.D. Tex.) ("Underlying Case").  The Underlying Case relates to breach of a license agreement and infringement of U.S. Patent No. 6,275,214 (the "'214 patent") by Nintendo and co-defendant PixArt Imaging, Inc.  The case has advanced through the close of fact discovery, claim construction, motions to transfer, and initial briefing on motions for summary judgment.

The documents and information at issue relate to a work-product draft patent assignment that is not being relied on by the parties in the case ("Work Product Assignment").  Three other patent assignments were produced during discovery that show SyncPoint's chain-of-title.  Ms. Butler accidentally produced the draft Work Product Assignment in the course of her duties as paralegal.  The Work Product Assignment is consistent with, and essentially looks the same as, the operative assignments save for a few minor stylistic changes, a similarity which resulted in the mistaken production. The only possible relevance it could have is the timing of the assignment; however, this concern is resolved based on the assignments of record in the case, which were indisputably executed and effective as of their signature date.

2

SyncPoint has indicated that the document is work product and has invoked the claw-back provision of the parties' discovery order.  Nintendo has simply ignored SyncPoint's position, and has doggedly pursued discovery from Ms. Butler.

The general rule, of course, is that parties should not depose opposing counsel, and as a member of the legal team representing SyncPoint, Butler is no exception to that rule. There is no reason why this situation should be viewed differently, since the information sought is all protected by the attorney-client privilege and/or the work product doctrine, the information sought is all available from other sources, and none of the information is necessary to Nintendo's case.  Furthermore, to mitigate the need for a deposition and resolve any legitimate concern that Nintendo might have, SyncPoint's counsel reached an agreement with Nintendo's counsel that allowed Nintendo to issue interrogatories on Ms. Butler to obtain whatever discoverable information may be available regarding the Work Product Assignment.  Ms. Butler responded to the interrogatories appropriately and within a truncated five (5) day period to enable all of the parties to quickly move beyond the issue. To further eliminate any possible need Nintendo may have for deposing Ms. Butler or seeking more invasive discovery, SyncPoint went so far as to allow additional interrogatories to be issued on its corporate representative who had already responded to interrogatories and had been deposed multiple days.

Although Nintendo received this additional discovery, which should have put an end to the discussion, it reissued its subpoena on December 22, 2015 ("Second Subpoena"). Because Nintendo's efforts to continue to seek more invasive document discovery and Ms. Butler's deposition at this point are wholly unnecessary, they are a waste of the parties' (and the courts') resources, and border on harassment.

## Summary of Relief Sought

Butler seeks an order from this Court pursuant to Rule 45(d)(3) quashing Nintendo's subpoena, and a protective order against the Butler deposition.

## Certificate of Consultation

Telephonic consultation was held between counsel for SyncPoint and Counsel for Nintendo in a good-faith attempt to resolve this discovery dispute, and counsel agreed to have Butler respond to interrogatories regarding Nintendo's inquiries. However, after the exchange of interrogatories and further consultation, Nintendo re-issued its subpoena, and the parties reached an impasse, necessitating the filing of this Motion.

## BACKGROUND

1. Lannea Butler is a trial paralegal to lead counsel in the Underlying Case and has been since before the time of the filing of the complaint. Declaration of Joseph G. Pia ("Pia Decl.") attached hereto as **Exhibit A**, ¶ 4.

2. Ms. Butler is involved in every aspect of the case including discovery, filing motions, legal research, document review, deposition preparation, hearing preparation, and providing other support. She will be the primary paralegal at trial. Pia Decl.**,** ¶ 5.

3. On November 20, 2015, Nintendo issued the First Subpoena, attached hereto as **Exhibit B**.

4. The First Subpoena required the production of "[a]ll native .pdf, Word documents, and image files for" documents SYNCPOINT000379–397, SYNCPOINT000401–419, BRILLIANT005006–5037, and BRILLIANT010206–BRILLIANT010206.009, as well as "[a]ll native .pdf, Word documents, and image files associated with or related to" those

documents, including any drafts of the document. The First Subpoena also required Ms. Butler to appear for deposition on December 4, 2015.

5. Counsel for SyncPoint indicated to counsel for Nintendo that the Work Product Assignment was a draft not being relied on in the case, and that it was work product that had been was inadvertently produced, which would therefore be clawed back under the parties' discovery orders.  Pia Decl.**,** ¶ 7.

6. The close of fact discovery in the Underlying Case was December 14, 2015.

7. Counsel for SyncPoint and Nintendo agreed that a reasonable resolution to the subpoena was to have Nintendo withdraw the subpoena, and permit it to issue limited interrogatories on Ms. Butler and SyncPoint's corporate representative.  Counsel agreed that the parties would reserve their rights regarding further claims for additional discovery and defenses to that discovery.  SyncPoint agreed that it would not use the close of fact discovery as a defense. Pia Decl.**,** ¶ 8.

8. On December 21, 2015, Ms. Butler responded to Nintendo's interrogatories. **Exhibit C**.  The responses are complete and substantive, while preserving the attorney-client privilege and work product protections.

9. On December 21, 2015, SyncPoint's representative responded to Nintendo's interrogatories.  **Exhibit D**.  The responses are complete and substantive, while preserving the attorney-client privilege and work product protections.

10. On December 22, 2015, Nintendo issued the Second Subpoena, attached hereto as **Exhibit E**.

5

11.     The Second Subpoena requires the production of the same documents described in the First Subpoena, and requires Ms. Butler to appear for deposition on January 6, 2016.

**ARGUMENT**

**I.     The Subpoena Should Be Quashed Because There Is No Justification For Nintendo To Depose Opposing Counsel's Paralegal.**

"In general, '[t]he practice of forcing trial counsel to testify as a witness ... has long been discouraged' and 'should be employed only in limited circumstances.'" *Probert v. The Clorox Co.*, 258 F.R.D. 491, 496 (D. Utah 2009), *aff'd sub nom. Probert v. Clorox Co.*, 404 F. App'x 486 (Fed. Cir. 2010) (*quoting Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986)). The Tenth Circuit has adopted the three-factor *Shelton* test to determine whether opposing counsel can be deposed. *Boughton v. Cotter Corp.*, 65 F.3d 823, 830 (10th Cir. 1995); *see also Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1112 n. 15 (10th Cir. 2001) ("*Shelton* was adopted by this court in *Boughton*.").

Under the *Shelton* test, depositions of opposing counsel are only allowed "where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327 (internal citation omitted). Outside of these limited circumstances, the practice of deposing opposing counsel "disrupts the adversarial system and lowers the standards of the profession … [while] also adding to the already burdensome time and costs of litigation." *Id.* In addition, the practice "detracts from the quality of client representation, [since] Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being

interrogated by his or her opponent." *Id.* Allowing such depositions would have a "chilling effect … on the truthful communications from the client to the attorney. *Id.*

Although Butler is not an attorney, she serves as litigation paralegal to lead trial counsel for plaintiff SyncPoint and has done so since before the commencement of the suit. Thus, all of the same concerns that motivate the rule against depositions of opposing counsel apply equally well to the deposition of Butler. Indeed, those courts that have considered the issue have concluded that the Shelton test should apply to depositions of opposing counsel's paralegal. *See, e.g.*, *Hughes v. Sears, Roebuck & Co.*, No. 2:09-CV-93, 2011 WL 2671230, at *5 (N.D.W. Va. July 7, 2011) (unpublished) ("a paralegal is comparable to an attorney for the purposes of [applying the *Shelton* test]").

Nintendo fails to meet the first prong because the information sought can be obtained from other sources. In fact, when Butler agreed to submit to interrogatories from Nintendo regarding the Work Product Assignment, interrogatories were also provided to Karl Hansen regarding the same set of documents. Karl Hansen has as much or more information about the provenance of the documents Nintendo seeks to discuss, and it is simple to notice him for deposition because he is the corporate representative and 30(b)(6) witness of SyncPoint. Furthermore, even if Butler possessed unique information, which she does not, Nintendo could have proposed interrogatories tailored to her and resolving such issues, rather than seeking a deposition. Thus, since the information can be obtained from other sources, a deposition of Butler is unnecessary and inappropriate under *Shelton*.

Nintendo likewise fails to meet the second prong because the information sought is protected by the work product doctrine and/or the attorney-client privilege. All of Butler's

7

knowledge regarding the assignment documents is inextricably intertwined with the confidential information communicated to lead trial counsel by Karl Hansen and SyncPoint in the course of seeking legal advice from trial counsel, since all of trial counsel's directions to Butler came as a result of those communications. Under Utah law, all of the confidential communications between trial counsel and its clients for the purpose of counsel rendering legal services are privileged, and this privilege extends to similar communications between counsel and its representatives including Butler. Utah R. Evid. 504(b)(2)(B). The only communications to Butler that would be relevant to this case would have been for the purpose of furthering the provision of legal advice to the clients, so the information sought is privileged and the subpoena should be quashed.

Furthermore, any information that Nintendo may be seeking from Butler regarding the document production process is clearly protected by the work product doctrine, since the document production process was undertaken as a direct result of the underlying litigation. The Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947), makes clear that work product protection extends to both tangible and intangible work product, including the thoughts and recollections of counsel. *See also* 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2024 ("*Hickman v. Taylor* continues to furnish protection for work product within [the] definition [from Rule 26(b)(3)] that is not embodied in tangible form."). Furthermore, the Supreme Court has explained that the protection extends beyond materials prepared by an attorney to include materials prepared by an attorney's agents and consultants. *United States v. Nobles*, 422 U.S. 225, 238–39 (1975) ("[A]ttorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the [work product] doctrine protect materials prepared by

8

agents of the attorney as well as those prepared by the attorney himself."). Thus, Butler's recollections regarding the document production process are protected by the work product doctrine, and the subpoena should therefore be quashed.

Nor does Butler's good-faith effort to explain the provenance of the Work Product Assignment in order to avoid this discovery dispute constitute a waiver of work product protection or attorney-client privilege. As long as work product is not put forward as the justification for a claim, response, or defense, it has not been used "as a sword and is not, therefore, prohibited from shielding the material from discovery." *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 704 (10th Cir. 1998). Butler should not be punished for trying to resolve Nintendo's confusion by providing additional information, nor should Nintendo be rewarded for ignoring Butler's interrogatory responses and pressing forward with an unnecessary and inappropriate deposition.

**II.     The Subpoena Should Be Quashed Because It Requests Production Of Documents That Are Protected By The Work Product Doctrine And The Attorney Client Privilege.**

The subpoena should also be quashed because it commands Butler to produce documents that are covered by the attorney-client privilege and the work product doctrine. Rule 45 provides that a Court must quash or modify a subpoena that requires disclosure of privileged or other protected material. Fed. R. Civ. P. 45(d)(3)(A)(iii). Nintendo's subpoena not only commands production of documents within the control of Butler but also any documents held by those "in privity with" Butler regarding these issues, which appears to be broad enough to include any other of trial counsel's employees or clients who are connected with this case. Among that broad universe of documents, Nintendo has requested "[a]ll native .pdf, Word documents, and image

9

files associated with or relating to" the sets of documents at issue. The phrase "relating to" is used "in its broadest sense," to include any additional documents that "reflect … evidence … identify … record … refer to, or … concern" the document sets at issue. Thus broadly defined, the subpoena requests production of essentially all documents held by trial counsel or even its clients that are related to the underlying case, as well as a number of documents held by trial counsel in connection with related cases. Because the subpoena requires disclosure of protected matter, it should be quashed.

In addition, as discussed above, the attorney-client privilege covers all confidential communications received by trial counsel, supporting counsel, local counsel, Butler, and others at the law firms from their clients for purposes of receiving legal advice. The subpoena therefore also requires disclosure of a broad range of attorney-client privileged documents, and should be quashed for that reason also.

### III. The Subpoena Should Be Quashed Because It Does Not Allow Sufficient Time For A Response And Because It Is Overly Broad and Unduly Burdensome.

The subpoena should also be quashed because of its other deficiencies. First, it allowed insufficient time for what would be a burdensome document production. (Subpoena, Exhibit A at 1.) Under Rule 45(d), there must be reasonable time for compliance. Fed. R. Civ. P. 45(d)(3)(A)(i).

In addition, the subpoena is overly broad and unduly burdensome. As discussed above, it requests "[a]ll native .pdf, Word documents, and image files associated with or relating to" the sets of documents at issue, and broad definition given for "relating to" makes the request apply to all documents held by trial counsel in relating to the underlying case and a large number of

documents held by trial counsel in connection with related cases. As such, the subpoena is overly burdensome and should be quashed under Rule 45(d)(3)(A)(iv).

### IV.     SyncPoint Should Be Awarded Attorney Fees.

The Rules require a party and its attorney to "take reasonable steps to avoid imposing undue burden or expense on a person" when issuing and serving a subpoena. Fed. R. Civ. P. 45(d)(1). This duty is to be enforced by the court where compliance is required, including by "impos[ing] an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply." *Id.*

Any serious consideration of the attorney-client privilege and work product doctrine would have put Nintendo on notice that its document requests were impermissible, and any serious consideration of the Tenth Circuit's requirements for deposing opposing counsel would have put Nintendo on notice of the impropriety of its subpoena of Butler. Given Nintendo's unnecessarily harassing and careless approach in requesting a deposition and documents that clearly fall beyond the appropriate scope of discovery, SyncPoint should be awarded attorneys' fees incurred in responding to the subpoena.

### CONCLUSION

For the foregoing reasons, Butler requests that the subpoena be quashed and that a protective order be entered preventing any further such efforts by Nintendo.

11

Respectfully Submitted,

DATED: January 4, 2016

PIA ANDERSON DORIUS REYNARD & MOSS

/s/ Joseph G. Pia
Joseph G. Pia
Sara E. Payne
Jedediah G. Brinton
*Attorneys for Lannea Butler*

CERTIFICATE OF SERVICE

      I hereby certify that on January 4, 2016, I caused a true and correct copy of the foregoing to be filed with the Court via the Court's electronic case management and filing system on all counsel of record.

PIA ANDERSON DORIUS REYNARD & MOSS

/s/ Joseph G. Pia
Joseph G. Pia